CULLEN AND DYKMAN LLP
177 Montague Street
Brooklyn, New York 11201
File No.: 225-55050
(718) 780-0261
Elisa M. Pugliese
*Counsel for Long Island Lighting Company d/b/a LIPA and
KeySpan Gas East Corporation d/b/a National Grid*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
In re: : Chapter 11
:
PLASTIC SOLUTIONS INC., : Case No.: 10-72327(dte)
:
: (Jointly Administered)
Debtor. :
------------------------------------------------------------------X

## OBJECTION OF LONG ISLAND LIGHTING COMPANY d/b/a LIPA AND KEYSPAN GAS EAST CORPORATION d/b/a NATIONAL GRID TO DEBTOR'S MOTION FOR AN ORDER (I) ENJOINING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PAYMENT AND (III) ESTABLISHING PROCEDURES <u>FOR DETERMINING ADEQUATE ASSURANCE PAYMENT</u>

Long Island Lighting Company d/b/a LIPA ("LIPA") and KeySpan Gas East Corporation d/b/a National Grid ("National Grid"), by their attorneys, object to the Debtor's Motion for an Order (I) Enjoining Utilities from Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Payment and (III) Establishing Procedures for Determining Adequate Assurance Payment (the "Utility Motion"), and set forth the following:

## Introduction

The Debtor Plastic Solutions Inc. (the "Debtor"), filed the Utility Motion on April 5, 2010. A hearing is scheduled on short notice for April 8, 2010, with objections being due by noon on April 7, 2010.

The Debtor's counsel emailed a copy of the Utility Motion and the Court's order setting down a hearing on the Debtor's First Day Motions on April 6, 2010, to the outside counsel that often represents LIPA and National Grid in bankruptcy cases in this District.

The only utilities affected by the Utility Motion are LIPA and National Grid. Instead of approaching LIPA and National Grid to negotiate a consensual agreement on adequate assurance, the Debtor has filed the instant motion whose sole purpose is to deny LIPA and National Grid their rights under 11 U.S.C. § 366 and burden the Court with unnecessary litigation.

The Utility Motion seeks to provide a worthless escrow account in the amount equal to 50 percent of the Debtor's estimated monthly cost of utility service without specifying how and in what fashion utilities might make claims on the account in the event that the Debtor fails to pay its utility bills in a timely fashion. While failing to provide utilities with adequate assurance of payment as required by Section 366 of the Bankruptcy Code, the Debtor also seeks to shift their burden under Section 366 to provide utilities with adequate assurance of payment requested by the utilities. The Debtor is seeking to change the focus from why the two-month deposits which utilities such as LIPA and National Grid are permitted to request are not appropriate[1] to why the Debtor's escrow account is not appropriate. In addition, the Debtor seeks to impose burdensome

---

[1] The two-month deposit requests contained in this Objection are the deposit amounts that LIPA's and National Grid's tariffs and, with respect to National Grid, the New York State Public Service Commission ("PSC") have determined are the appropriate amounts a New York utility can request from its customers. 16 NYCRR § 13.7.

2

requirements upon utilities that actually seek to pursue their rights to obtain adequate assurance of payment.

In addition to completely ignoring LIPA's and National Grid's rights under Section 366, the proposed escrow account is an inadequate amount to secure LIPA's and National Grid's post-petition accounts. Since LIPA and National Grid issue bills in arrears on a monthly (30-day) basis, there is no rationale basis as to why one-half of one-month's service could even begin to cover the payment of LIPA's and National Grid's post-petition invoices.

LIPA and National Grid, unlike the Debtor's other vendors, stand in a unique position with respect to the Debtor: (1) utilities such as LIPA and National Grid are the only entities that supply electric and gas service to the Debtor; (2) LIPA's and National Grid's billing cycles are governed by their tariffs and they cannot establish their own payment terms, such as C.O.D.

If the Debtor does not pay two-month adequate assurance deposits to LIPA and National Grid, LIPA and National Grid are likely to find themselves before this Court each month with an administrative expense application to ensure timely utility payments by the Debtor. If LIPA and National Grid maintain a two-month deposit and the Debtor timely pays its invoices, the two-month deposit should secure LIPA and National Grid against loss and avoid the need for LIPA and National Grid to file Motions with this Court each month seeking payment for their monthly invoices.

Therefore, LIPA and National Grid request that the Court deny the Utility Motion, and require the Debtor to comply with the requirements of Section 366.

### **Procedural Facts**

1. On April 1, 2010 (the "Petition Date"), the Debtor commenced the case under

Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that is now pending with this Court. The Debtor continues to operate its business and manage its properties as Debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. The Debtor filed the Utility Motion on April 5, 2010.

3. Through the Utility Motion, the Debtor proposes to provide as adequate assurance of future payment the creation of a segregated account in favor of the utilities, in an amount equal to 50 percent of the Debtor's estimated monthly cost of utility service. Utility Motion at ¶ 13. The Debtors further propose that any utility that is not satisfied with the Debtors' supposed adequate assurance of future payment must submit a written request for additional adequate assurance. Utility Motion at ¶ 14.

4. Through the Utility Motion, the Debtors seek the following adequate assurance procedures:

    a. Unless an Additional Assurance Request (as defined below) is properly given and served in accordance with these Additional Assurance Procedures, the Utility Companies are forbidden to i) discontinue, alter, or refuse service, including on account of any unpaid pre-petition charges, or ii) require additional adequate assurance of payment other than the Adequate Assurance Deposit.

    b. Any Utility Company making an additional adequate assurance request (an "Additional Assurance Request") must make such request in writing to [the Notice Parties] . . . . such that it is received on or before twenty-five (25) days from the Petition Date (the "Resolution Period"). Any Additional Assurance Request must (i) be made in writing; (ii) set forth the amount and form of additional assurance of payment requested; (iii) set forth the location for which Utility Services are provided; (iv) include a summary of the Debtors' payment history to such Utility Company, including any security deposits; and (v) set forth why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of payment.

4

    c.    Upon the Debtor's receipt of any Additional Assurance Request at the addresses set forth above, the Debtor shall have until the end of the Resolution Period to reach a consensual agreement with such Utility Company to resolve such Utility Company's request for additional assurance of payment.

    d.    During the Resolution Period, a Utility Company making an Additional Assurance Request shall be prohibited from discontinuing, altering or refusing service to the Debtor, including on account of unpaid charges for pre-petition services or on account of any objections to the Utility Reserve.

    e.    The Debtor may, in its discretion, resolve any Additional Assurance Request by mutual agreement with the Utility Company and without further order of the Court, and may, in connection with any such agreement, in its discretion, provide a Utility Company with additional adequate assurance of payment, including but not limited to, cash deposits, prepayments, and/or other forms of security, without further order of this Court if the Debtor believes such additional assurance is reasonable. The provision of such additional adequate assurance shall have no effect on the rights and entitlements of other Utility Companies, and shall not obligate the Debtor to provide similar additional assurance to other Utility Companies.

    f.    If the Debtor determines that the Additional Assurance Request is unreasonable and is unable to reach a consensual resolution with the requesting Utility Company during the Resolution Period, the dispute shall be resolved at a hearing before this Court, pursuant to section 366(c)(3) of the Bankruptcy Code, in which a final determination regarding adequate assurance will be made with respect to all Utility Companies making Additional Assurance Requests (the "Final Hearing"). All Utility Companies not making Additional Assurance Requests by the date of the Final Hearing shall be deemed to have adequate assurance of payment.

    g.    Pending resolution of the Final Hearing, all Utility Companies shall be prohibited from discontinuing, altering, or refusing service to the Debtor, including on account of unpaid charges for pre-petition services or on account of any objections to the Adequate Assurance Deposit.

Utility Motion at ¶ 14.

5.    The Debtor contends that its proposed adequate assurance of future payment, combined with its supposed ability to pay for future utility services in the ordinary course of

5

business, constitutes adequate assurance of future payment. Utility Motion at ¶ 13.

### Facts Regarding the Debtor Which Support the Utilities' Request For Adequate Assurance of Payment

6. This is not the first time that the Debtor has filed a Chapter 11 petition. Its last Chapter 11 case was Case No. 04-81401-dte. Debtor's Emergency Application for the Interim Use of Cash Collateral ("Cash Collateral Motion") at ¶ 3.

7. The Debtor is a corporation formed and existing under the laws of the State of New York and operates a manufacturing company in Bayport, New York. Utility Motion at ¶ 5.

8. The Debtor's creditor body consists of unsecured priority debt of approximately $682,000.00, and general unsecured debt of approximately $100,000.00. Utility Motion at ¶ 6.

9. The Debtor seeks to use the cash collateral the subject to an IRS tax lien. Cash Collateral Motion at ¶¶ 5-7.

10. A hearing on the Debtor's use of cash collateral is scheduled for April 8, 2010, at the same time as the Utility Motion.

### Facts Concerning LIPA and National Grid

11. LIPA and National Grid provided, and continue to provide, utility service to the Debtor at its premises located at 20 Rajon Road, Bayport, New York 11705. LIPA provided the Debtor with pre-petition utility service and has continued to provide the Debtor with post-petition utility service via two (2) accounts. The estimated pre-petition balance owing by the Debtor to LIPA is approximately $41,000.00. National Grid provided the Debtor with pre-petition utility service and has continued to provide the Debtor with post-petition utility service via two (2) accounts. The pre-petition balance owing by the Debtor to National Grid is

approximately $1,750.00.[2]

12. LIPA and National Grid issue bills on a monthly (30-day) basis and payment is due upon presentation. If payment is not made within twenty-seven (27) days, a late payment charge at the rate of one and one-half percent per monthly billing period is applied to the account. Service may be terminated upon a customer's failure to i) pay a bill for utility service within twenty-three (23) days from the date payment is due, or ii) pay a lawfully required security deposit, but not until eight (8) days after written notice is mailed to the customer at the premises where service is rendered. Accordingly, under LIPA's and National Grid's billing cycles, the Debtor could receive at least sixty-one (61) days of unpaid service before its service could be terminated for a post-petition payment default.

13. Subject to a reservation of LIPA's and National Grid's rights to supplement their post-petition deposit requests if additional accounts belonging to the Debtor are subsequently identified, LIPA's post-petition deposit requests for the Debtor's two (2) accounts total $25,785.00 and National Grid's post-petition deposit requests for the Debtor's two (2) accounts total $1,730.00 as follows:

| | | |
|---|---|---|
| LIPA: | Account No.: 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-4 | $ 15,440.00 |
| | Account No.: 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-3 | $ 10,345.00 |
| | **TOTAL** | **$25,785.00** |
| | | |
| National Grid: | Account No.: 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-2 | $ 1,680.00 |
| | Account No.: 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-2 | $      50.00 |
| | **TOTAL** | **$1,730.00** |

---

[2] Although LIPA and National Grid object to the Debtor's requirement that a utility Additional Assurance Request list the Debtor's payment history, see Section C, below, they note that the Debtor had a bad pre-petition payment history with LIPA or National Grid. During the last 12 months, the Debtor paid its LIPA bills late on at least eleven (11) occasions, paid its LIPA bills on at least three (3) occasions with checks that were subsequently returned for insufficient funds, and paid its National Grid bills late on at least ten (10) occasions and paid its National Grid bill on at least one (1) occasion with a check that was subsequently returned for insufficient funds.

7

These requests are based upon twice the Debtor's average monthly usage and/or twice the average monthly usage for the peak season, pursuant to LIPA's and National Grid's tariffs and, with respect to National Grid, the regulations of the New York State Public Service Commission, 16 NYCRR §13.7(b)(1).

14. The Debtor may pay these deposits by supplying a surety bond or letter of credit. If the Debtor wish to pay cash deposits, they may pay in three (3) monthly installments.

15. LIPA and National Grid will maintain these deposits pursuant to their tariffs and will pay the Debtor interest on cash deposits.

## Discussion

**A. THE COURT SHOULD REJECT THE DEBTOR'S PROPOSED ADEQUATE ASSURANCE PROCEDURES THAT CONTRAVENE THE EXPRESS PROVISIONS OF SECTION 366 WHICH REQUIRES A DEBTOR TO PROVIDE A UTILITY WITH ADEQUATE ASSURANCE AS DEMANDED BY THE UTILITY, AND IF THE DEBTOR BELIEVE THAT THE DEPOSIT SHOULD BE MODIFIED, THE DEBTOR MUST FILE A MOTION TO MODIFY THE ADEQUATE ASSURANCE DEPOSIT PAID TO THE UTILITY.**

Sections 366(b) and (c) of the Bankruptcy Code, in pertinent part, provide:

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. . . .
    (c)(1)(A) For purposes of this subsection, the term 'assurance of payment' means
        (i) a cash deposit;
        (ii) a letter of credit;
        (iii) a certificate of deposit;
        (iv) a surety bond;
        (v) a prepayment of utility consumption; or
        (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.
    (B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment,

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider
(i) the absence of security before the date of the filing of the petition;
(ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
(iii) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

Section 366(b) expressly provides that a debtor must provide a utility with adequate assurance of payment that the utility believes is satisfactory within the first 30 days of the bankruptcy proceeding. Section 366(c)(3)(a) (3)(A) further provides:

> On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

Accordingly, the proper procedure under Section 366 is for a debtor to provide a utility with adequate assurance of payment requested by the utility within 30 days of the bankruptcy proceeding, and if the debtor wants a modification of the amount of adequate assurance of payment that it has provided to the utility, then the debtor must file a motion to modify the deposit it has paid to the utility. Simply put, a debtor must first pay the requested deposit amount, and then file a motion to modify the paid deposit. See In re Lucre, Inc., 333 B.R. 151 (Bankr. W.D. Mich. 2005) (holding that a debtor has no

9

recourse to modify the adequate assurance payment that a utility is demanding until the debtor actually accepts and pays the adequate assurance that the utility proposes); In re Stagecoach Enterprises, Inc., 1 B.R. 732 (Bankr. M.D. Fla. 1979) (holding that under Section 366, the utility itself has the initial right to set the amount of the deposit or other adequate assurance that it requires for the payment of utility service, and that the debtor can apply to the court for a modification of whatever amount the utility deems necessary to provide adequate assurance of payment). Additionally, the debtor has the burden of proof as to whether its requested adequate assurance modification is justified. Id. at 734 (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof).

### B. THE COURT SHOULD REJECT THAT PORTION OF THE DEBTOR'S MOTION THAT SEEKS TO BAR UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE TO THE DEBTOR WHEN THE PROHIBITION OF SECTION 366 IS MUCH MORE LIMITED IN SCOPE.

LIPA and National Grid also object to that portion of the Utility Motion which seeks to have the Court prohibit LIPA and National Grid from terminating service for post-petition defaults without court approval. LIPA and National Grid object to this provision because it, in effect, constitutes an injunction against their discontinuing, altering or refusing service for post-petition defaults. Thus, pursuant to Fed. R. Bankr. P. 7001(7), the Debtor must commence an adversary proceeding to obtain such relief. Accordingly, since the Debtor has failed to follow Fed. R. Bankr. P. 7001(7), the Court should deny the Debtor's motion to the extent it seeks injunctive relief. See In re Norsal Indus. Inc., 147 B.R. 85, 86 (Bankr. E.D.N.Y. 1992). See also, In re Conxus Communications, Inc., 262 B.R. 893, 899-900 (D. Del. 2001); In re Best Products

Co., 203 B.R. 51, 54 (Bankr. E.D.Va. 1996).

Although the Debtor accurately cites 11 U.S.C. § 366 (a) in the body of the Utility Motion, see Utility Motion at ¶11, the Proposed Order attached to the Utility Motion, describes the relief being sought by the Debtor as "enjoining the utilities …from altering, refusing, or discontinuing such services without appropriate notice and a hearing". Proposed Order, first paragraph. Such a reading expressly contravenes Section 366. 11 U.S.C. § 366 (a) provides (emphasis supplied): "…a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor **solely on the basis of the commencement of a case under this title** or **that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.**"

Section 366 does **not** bar a utility from terminating service to a debtor who fails to timely pay its post-petition bills. Robinson v. Michigan Consol. Gas Co., Inc., 918 F.2d 579, 588 (6th Cir. 1990); Begley v. Philadelphia Elect. Co., 760 F.2d 46, 49 (3d Cir. 1985); In re Security Investment Properties, Inc., 559 F.2d 1321, 1325 (5th Cir. 1977). See also, Conxus Communications, 262 B.R. at 899; Best Products, 203 B.R. at 54. Moreover, LIPA and National Grid should not be forced to bear the burden and expense of having to come to this Court to terminate the Debtor's service for the Debtor's failure to timely pay its post-petition bills.

Pursuant to State law and their tariffs, LIPA and National Grid may not terminate service to the Debtor unless the Debtor has failed to timely tender its bills and LIPA and/or National Grid provide the Debtor with advance notice. Thus, the Debtor will receive actual advance notice of any threatened termination and can move this Court for relief during the notice period. Therefore, LIPA and National Grid should retain their rights to terminate the Debtor's utility

11

service, without a court order, for the Debtor's failure to timely pay post-petition bills.

C. **THE COURT SHOULD REJECT THE PROCEDURES THAT ATTEMPT TO ADD TIME CONSUMING AND BURDENSOME REQUIREMENTS THAT ARE NOT FOUND IN SECTION 366.**

In addition to seeking to avoid the time limitations established by Section 366, the Debtor also seek procedures designed to make the adequate assurance of payment process more time consuming and burdensome. For example, even though Section 366 now defines assurance of payment, it contains no provisions requiring utilities to make demands for adequate assurance within certain time periods nor does it establish requirements for the content of any such request. Despite the foregoing, the proposed procedures set forth in the Utility Motion require utilities who are not satisfied with the Debtor's proposed adequate assurances to serve a request which must (a) be in writing, (b) set forth the amount and form of additional assurance of payment requested, (c) set forth the location for which the utility services are provided, (d) include a summary of the Debtor's payment history to such utility company, including any security deposits, and (e) set forth the reasons why the utility company believes the proposed adequate assurance is not sufficient adequate assurance of payment. Utility Motion at ¶ 14(c). Additionally, the utility must serve and file the request so that it is received on or before twenty-five (25) days from the Petition Date. Id.

Information regarding pre-petition payment history as well as pre-petition security deposits, which the utilities would be required to provide to the Debtor as part of an Additional Assurance Request under the proposed procedures in the Utility Motion is statutorily irrelevant pursuant to Sections 366(c)(3)(B). Section 366(c)(3)(B) expressly

12

provides (emphasis supplied):

> (B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider
> (i) **the absence of security before the date of the filing of the petition;**
> (ii) **the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition;** or
> (iii) the availability of an administrative expense priority.

Moreover, the Debtor presumably has access to the same account information as the utilities. The Debtor is merely seeking to impose these requirements and procedures upon the utilities to dissuade the utilities from making requests for adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code. Simply put, such burdensome procedures are not contained in Section 366 and should not be granted by this Court.

### D. THE COURT SHOULD ORDER THE DEBTOR TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED HEREIN PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.

Section 366(c) was amended to overturn decisions such as <u>Virginia Electric and Power Company v. Caldor, Inc.</u>, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

A determination of adequate assurance is within the court's discretion, and is

made on a case-by-case basis, subject to the new requirements of Section 366(c). See In re Utica Floor Maintenance, Inc., 25 B.R. 1010, 1016 (Bankr. N.D.N.Y. 1982); In re Cunha, 1 B.R. 330, 332-33 (Bankr. E.D. Va. 1979). Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. See In re Hanratty, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." In re Coastal Dry Dock & Repair Corp., 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." In re Begley, 760 F.2d 46, 49 (3d Cir. 1985). Based on the Debtor's anticipated utility consumption, the minimum period of time the Debtor could receive service from LIPA and National Grid before termination of service for non-payment of bills is at least sixty-one (61) days. Accordingly, the two-month security deposits requested by LIPA and National Grid are reasonable. See In re Stagecoach, 1 B.R. 732, 735-36 (Bankr. M.D. Fla. 1979) (two month deposit is appropriate where the debtor could receive 60 days of service before termination of services because of the utilities' billing cycle.); see also In the Matter of Robmac, Inc., 8 B.R. 1, 3-4 (Bankr. N.D. Ga. 1979).

As set forth above, LIPA's and National Grid's deposit requests are based on: (1) their billing exposure created by respective state law tariffs and/or regulations; and (2) amounts that the PSC, which is a neutral third-party entity, permits National Grid to

14

request. Although National Grid recognizes that this Court is not bound by the regulations/tariffs of the PSC, it is extremely relevant information of a determination made by an independent entity on the appropriate amount of security that should be paid to National Grid.

In contrast, the Debtor does not provide an objective basis for its meager adequate assurance offer. In the absence of any rational basis for the Debtor's position, the Court should deny the Debtor's motion and grant LIPA's and National Grid's deposit requests.

## **WAIVER OF MEMORANDUM OF LAW**

Based upon the authority provided herein, LIPA and National Grid respectfully request that the Court waive the requirement that LIPA and National Grid file a memorandum of law in support of this Objection pursuant to Local Bankruptcy Rule for the Eastern District of New York 9013-1(b).

## **CONCLUSION**

WHEREFORE, LIPA and National Grid respectfully request that this Court enter an order, with respect to LIPA and National Grid:

(I)  Denying the Utility Motion;

(II) Awarding LIPA and National Grid the post-petition adequate assurances of payment they are requesting from the Debtor herein; and

(III) Award such other and further relief as the Court deems just and appropriate.

Dated: Brooklyn, New York
April 7, 2010

CULLEN AND DYKMAN LLP

By: *Elisa M. Pugliese*
Elisa M. Pugliese
*Attorneys for Creditors*
*Long Island Lighting Company*
*d/b/a LIPA and KeySpan Gas East*
*Corporation d/b/a National Grid*
177 Montague Street
Brooklyn, New York 11201
(718) 780-0261
File No.: 225-55050
epugliese@cullenanddykman.com